## DUTCHER *v.* WRIGHT.

1. In computing the four months before filing the petition in bankruptcy, within which time the assignment of his property by an insolvent debtor, with a view to give a preference to any creditor, is void, the day upon which the petition is filed must be excluded.

2. *Toof et al.* v. *Martin*, 13 Wall. 40, and *Buchanan* v. *Smith*, 16 id. 277, cited, and the doctrines therein announced applied to the facts of this case.

APPEAL from the Circuit Court of the United States for the Eastern District of Wisconsin.

The facts are stated in the opinion of the court.

*Mr. W. P. Lynde* for the appellant.

*Mr. E. Mariner, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Transfers of property by an insolvent debtor, within four months before the filing of the petition in bankruptcy against such debtor, with a view to give a preference to any creditor, is forbidden by the Bankrupt Act; and the provision is to the effect that if any such insolvent debtor, within that period and with that view, procures or suffers his property, or any part

thereof, to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or convey-ance of his property, within that period and with that view, the attachment or seizure and the payment, pledge, assignment, transfer, or conveyance shall be void, if the person receiving the same, or to be benefited thereby, had reasonable cause to believe that such debtor was insolvent, and that such attachment, payment, pledge, assignment, or conveyance was made in fraud of the provisions of the Bankrupt Act. 14 Stat. 534; Rev. Stat., sect. 5128.

Congress has also defined the meaning of certain terms employed in the Bankrupt Act, and has regulated the mode of computing time " in all cases in which any particular number of days is prescribed by the act, or shall be mentioned in any rule or order of court, or general order which shall at any time be made under the same, for the doing of any act or for any other purpose," the rule enacted being that the computation " shall be reckoned, in the absence of any expression to the contrary, exclusive of the first and inclusive of the last day, unless the last day shall " be *dies non* within the judicial sense. Rev. Stat., sect. 5013, p. 974.

Most of the matters of fact material to the decision of the case are either admitted, or so fully proved that they may be regarded as without dispute. Peterson, being insolvent, was, on the 8th of April, 1870, adjudged bankrupt, pursuant to his own petition filed in the District Court for the District of Minnesota. Prior to that time he had long been engaged in trade, doing business as a merchant in Rochester, in that State. Sufficient appears also to show that the respondents were engaged in trade, doing business as wholesale merchants under the firm name of Dutcher, Ball, & Goodrich, at Milwaukee, in the State of Wisconsin; that the said Peterson, on the 8th of December next before the time he was adjudged bankrupt, and long before that time, was insolvent, and largely indebted to the respondents for goods, wares, and merchandise theretofore sold and delivered to the bankrupt at his aforesaid place of business; and that the bankrupt did then and there, to wit, on the said 8th of December, with the knowledge, assent, and procurement of the respondents, assign, transfer, and con-

vey to the said respondents certain portions of his property, consisting of promissory notes, securities, mortgages, and other evidences of indebtedness, with a view to give a preference to the respondents over the other creditors of the bankrupt, and in fraud of the provisions of the Bankrupt Act.

Proof of a satisfactory character is exhibited in the record to show that the assignment, transfer, and conveyance of the said securities and property were made to the respondents with a view to secure to them a preference over the other creditors of the bankrupt; and that the respondents had reasonable cause to believe that the assignor, transferrer, and grantor was then and there insolvent, and that the assignment, transfer, and conveyance of the securities and property were made in fraud of the provisions of the Bankrupt Act and to prevent the said securities and property from coming to the possession of the assignee of the bankrupt debtor for distribution among his creditors, as required by law.

What the complainant charges is, that the securities and property transferred, assigned, and conveyed to the respondents belonged to him as the assignee of the bankrupt; and he prays for an account, and that the moneys collected be paid to him as such assignee, and that the securities uncollected be turned over to him, for the benefit of the creditors of the bankrupt.

Process was served; and the respondents appeared and pleaded the following defences: 1. That the securities and property were not transferred, assigned, and conveyed within four months next before the petition in bankruptcy was filed. 2. That the respondents were not served with process within two years from the time the cause of action accrued. 3. That the District Court for the District of Minnesota had exclusive jurisdiction of the cause of action set forth in the bill of complaint.

Instead of replying to the plea, the complainant under the rule in that behalf obtained an order setting it down for hearing at the next term; and the parties at the time appointed were fully heard, and the court overruled the several defences set up in the plea.

Pursuant to leave, the respondents filed an answer to the effect following, reference being first made to the admissions

which the answer contains: 1. They admit that the insolvent debtor was adjudged bankrupt on the day alleged in the bill of complaint, and that the complainant was duly appointed the assignee of the bankrupt's estate, as therein alleged; that an assignment of his estate was in due form made to the complainant, as assignee of the bankrupt's estate, and that the same became duly vested in him as such assignee; that the bankrupt was, on that day, indebted to the respondents in the sum of $1,741.12, for goods, wares, and merchandise which their firm had previously sold to the bankrupt.

None of these facts are controverted; and it is also admitted that one of the respondents, on the same day, had an interview with the bankrupt at the office of an attorney in the town where the bankrupt resides, in relation to his indebtedness to their firm, for the purpose of adjusting his indebtedness; and that the bankrupt on that day gave the respondents' firm a note for the amount of his indebtedness to the firm, and that he assigned to the firm the notes and accounts against his customers specified in the schedule exhibited in the record, and placed the same in the hands of the said attorney for collection as collateral security for the note given to the firm, the balance, if any, after paying the note and the expense of collecting the collaterals, to be paid over to the bankrupt.

These collaterals, it is admitted, greatly exceeded the amount of the bankrupt's indebtedness to the respondents; but they allege as matter of defence that they had no reasonable cause to believe, at the time of taking the same, that their debtor was insolvent or unable to pay his debts, and aver that their partner, when he made the arrangement, acted in good faith, and in the full belief that the bankrupt had assets sufficient to pay all he owed, and leave him a surplus of $12,000 to $13,000; that he was then in the possession of a valuable stock of dry-goods and groceries; and that, from inquiries their partner made of the debtor and the attorney with whom the collaterals were deposited for collection, he, the partner, believed that the debtor had sufficient available assets to pay all his debts, and to leave him a good surplus.

Beyond all doubt, the debtor was then insolvent; and it does not appear that the respondents or the active partner made any

inquiries as to his pecuniary standing, except of the national bank, where he was owing $1,700, and of the debtor and the depositary of the notes and accounts assigned as collaterals; and they admit in the answer that their partner, in order to perfect the arrangement, found it necessary to hold out the inducement to the debtor, that, if he did not pay or secure what he owed the firm, they would be obliged to sue their claim, and collect the same by due process of law. Aided by such inducements, the partner succeeded, and was permitted to take enough of the debtor's notes and accounts to pay the claim of the firm in full, and the expenses of collecting the notes and accounts, with the understanding that the excess, if any, should be delivered back to the debtor. Times became hard with the debtor early in May preceding the arrangement, as appears by the correspondence exhibited in the record, from which it may reasonably be inferred that the firm were resolved to obtain security, or to enforce payment by legal proceedings.

Insolvency, in the sense of the Bankrupt Act, means that the party whose business affairs are in question is unable to pay his debts as they become due, in the ordinary course of his daily transactions; and a creditor may be said to have reasonable cause to believe his debtor to be insolvent when such a state of facts is brought to his notice respecting the affairs and pecuniary condition of his debtor as would lead a prudent man to the conclusion that the debtor is unable to meet his obligations as they mature, in the ordinary course of his business. *Buchanan* v. *Smith,* 16 Wall. 308; *Toof et al.* v. *Martin,* 13 id. 40.

Reasonable cause for such a belief cannot arise unless the fact of insolvency actually existed; but if it appears that the debtor giving the preference was actually insolvent, and that the means of knowledge were at hand, and that such facts and circumstances were known to the creditor securing the preference as clearly ought to have put a prudent man upon inquiry, it must be held that he had reasonable cause to believe that the debtor was insolvent, if it appears that he might have ascertained the fact to be so by reasonable inquiry. *Scammon* v. *Cole,* 5 N. B. Reg. 263; *Wilson* v. *City Bank,* 17 Wall. 487.

Witnesses were examined, the parties were heard, and the

court entered a decree in favor of the complainant; and the respondents appealed to this court.

Certain important findings of fact are set forth in the interlocutory decree, as follows: 1. That the debtor, on the 8th of December, 1869, was insolvent. 2. That the respondents then and there had reasonable cause to believe that he was insolvent, and that the assignment of notes and accounts set forth in the answer was made by the debtor when insolvent, and with a view to give a preference to the respondents as his creditors, and that they then and there had reasonable cause to believe that the assignment was made in fraud of the provisions of the Bankrupt Act.

Suffice it to say that the proofs and the admissions contained in the answer are sufficient to show that the findings of the Circuit Court are correct, and that the decree there rendered should be affirmed, unless the defences set up in the plea, or some one of them, can be sustained. Defences of the kind are not waived by filing an answer to the merits. They were all presented in one plea, but they will be separately considered in the reverse order from which they are set forth in the plea.

1. Suits may be instituted and prosecuted to final judgment by an assignee in bankruptcy to recover the assets of the bankrupt in the Circuit or District Court in a district other than that in which the decree in bankruptcy was entered, which is all that need be said in response to the objection that the District Court, where the suit in this case was commenced, had no jurisdiction to maintain the suit. *Shearman* v. *Bingham*, 7 N. B. Reg. 490; *Lathrop, Assignee,* v. *Drake et al.,* 91 U. S. 516.

2. Assignees have two years from the time the cause of action accrued within which to enforce such a claim, and, inasmuch as the suit in the court below was instituted within that time, the plea of limitation must be overruled. 14 Stat. 518.

3. Suppose that is so, still it is insisted by the respondents that the notes, accounts, and property were not assigned to them within four months before the petition in bankruptcy was filed in the District Court by the insolvent debtor. Both parties agree that the petition in bankruptcy was filed April 8, 1870, and it appears both by the bill of complaint and the plea

filed by the respondents that the notes, accounts, and property were assigned by the bankrupt to the respondents the 8th of December of the preceding year. Undisputed as the facts are, the decision must turn upon the construction of the Bankrupt Act. 14 Stat. 534; Rev. Stat., sect. 5128.

Taken literally, it might be suggested that the phrase, " four months before the filing of the petition," would exclude the day the petition was filed, fractions of a day being forbidden in such a computation; nor would it benefit the respondents if the rule prescribed by sect. 5013 of the Revised Statutes should be applied, which is, that in all cases in which any particular number of days is prescribed in that title, or shall be mentioned in any rule or order of court, or general order, which shall at any time be made under the same for the doing of any act, or for any other purpose, the same shall be reckoned, in the absence of any expression to the contrary, exclusive of the first and inclusive of the last day.

Where the phrase to be construed does not contain any expression to the contrary, the enactment is that that rule shall apply, leaving it to be understood that the phrase to be construed may contain words prescribing its own rule in that regard, and that if it contains any inconsistent expression to the contrary, that the rule prescribed in that section shall not necessarily control the meaning of the phrase to be construed.

Apply that qualification to the rule prescribed in sect. 5013, and still it might be suggested that the meaning of the phrase, " within four months before the filing of the petition," is entirely consistent with that rule.

Unless the day when the notes, accounts, and property were assigned, and the day when the petition in bankruptcy was filed, are both included in the computation, the defence fails, and the complainant is entitled to an affirmance of the decree. Neither argument nor authority is found in the brief of the respondents supporting any such rule of construction, and it is believed that no decided case can be referred to, where such a theory was ever adopted. Decided cases may be found in which it is held, where an act is required by statute to be done a certain number of days at least before a given event, that the time must be reckoned, excluding both the day of the act and that of

the event. *The Queen* v. *The Justices*, 8 Ad. & E. 173; *Mitchell* v. *Foster*, 12 id. 172; *Zouch* v. *Empsey*, 4 B. & Ald. 522.

Search has been made in vain for a decided case in which it is held that both the day of the act and the day of the event shall be included in the computation, in order to ascertain the specified period of time. Cases may be found in which it is held, that, where the computation is to be made from an act done, the day on which the act is done is to be included. *Arnold* v. *United States*, 9 Cranch, 120.

Exceptions undoubtedly exist to that rule, and it must be admitted that there are many cases in which it is held that the last day is included and that the first is excluded.

Speaking of the conflict of judicial decision upon the subject, Lord Mansfield said that the cases for two hundred years had only served to embarrass a point which a plain man of common sense and understanding would find no difficulty in construing, and he came to the conclusion that courts of justice ought to construe the words of parties so as to effectuate their deeds and not destroy them, and that "from the date" may, in popular use and even in strict propriety of language, mean either inclusive or exclusive. *Pugh* v. *Leeds*, Cowp. 714.

Special reference was made to that decision in the case of *Griffith* v. *Bogert*, 18 How. 158, in which this court held to the effect that the general rule is to treat the day from which the period of time is to be calculated, or *terminus a quo*, as inclusive, and they applied that rule in the decision of that case; but they remarked in the opinion that "every case must depend on its own circumstances." Thirty years before that, the Supreme Court of New York decided that it was the practice of that court, where an act is to be done within a specified number of days, to consider the day on which notice is given and the day on which the act is to be done, the one inclusive and the other exclusive, without any particular designation that the one or the other shall be exclusive. *Gillespie* v. *White*, 16 Johns. (N. Y.) 120.

Three of the courts of England, — to wit, the King's Bench, the Common Pleas, and the Exchequer, — forty-five years ago, adopted the following rule to regulate the practice in those courts: "That, in all cases in which any particular number of

days, not expressed to be clear days, is prescribed by the rules or practice of the courts, the same shall be reckoned exclusively of the first day and inclusively of the last day, unless the last day shall happen to " be *dies non* in legal contemplation. 8 Bing. 307.

Repeated attempts have been made to settle the question, but different rules still prevail in different jurisdictions.

Due weight in every case should be given to the words of the phrase to be construed, and by so doing many of the reported cases otherwise seemingly inconsistent may be satisfactorily reconciled., Still it must be admitted that it is difficult, if not impossible, to deduce from the reported decisions any rule which will apply in all cases, nor is it necessary to make the attempt in this case, as the court is unanimously of the opinion that the day the petition in bankruptcy was filed must be excluded in making the computation, and that the decree of the Circuit Court is correct. Rev. Stat., sect. 5013.      *Decree affirmed.*