## UNITED STATES v. BARBER et al.
### No. 2544.

District Court, D. Maryland.

Aug. 10, 1938.

230

Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., and James W. Morris, Asst. Atty. Gen., and Andrew J. Sharpe and Lyle M. Turner, Sp. Assts. to Atty. Gen., for plaintiff.

. McIntosh & Thrift and Wm F. Podlich, all of Baltimore, Md., and S. Wallace Dempsey, Bruce Fuller, McNeill & McNeill, and Kelly Kash, all of Washington, D. C., for defendants.

CHESNUT, District Judge.

This case is now before the court on motions of the defendants to dismiss the "first amended bill of complaint" in equity. The nature of the case is that the Government is endeavoring to impress a trust on the property of the defendants alleged to have been fraudulently received by them from a Delaware corporation known as the Fidelity Finance and Audit Corporation, against which the Commissioner of Internal Revenue made a deficiency tax assessment on May 21, 1932, in the amount of $3,503.19, together with $458.87 interest. It is alleged that notice and demand for payment of the deficiency assessment was promptly made by the Collector of Internal Revenue for the District of Maryland, who caused a warrant of distraint to be issued against the corporation, but failed to find any property to satisfy it; and that the corporation was dissolved in Delaware on April 1, 1933, and on March 31, 1936 passed out of existence under the laws of that State. It is further alleged in very general terms that prior and subsequent to the making of said assessment the corporation transferred its property fraudulently and without consideration to some or all of the individual defendants for the purpose of evading the tax liability.

The liability of the defendants is predicated on the general equitable trust fund doctrine affecting voluntary transferees with notice of plaintiff's claim. No assessment has been made against them for the initial tax liability of the transferor corporation, and the suit is not therefore based on statutory summary procedure against the transferees under section 311 of the Revenue Act of 1928, 45 Stat. 860, 26 U.S.C.A. § 311; although the general equitable liability of a transferee in such a case is recognized by that statute. See Leighton v. United States, 289 U.S. 506, 53 S.Ct. 719, 77 L.Ed. 1350; Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289; Hulburd v. Commissioner, 296 U.S. 300, 56 S.Ct. 197, 80 L.Ed. 242; United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984.

The motions to dismiss are based on a number of grounds, the most important of which are: (1) That the suit was not filed within the six-year period of limitations fixed by statute; (2) that the allegations of the bill as to the alleged fraudulent transfers are too indefinite, uncertain and general to state a good case in equity against the defendants; and (3) that the assessment against the corporation on which the liability of the defendants is predicated was void. These several points will be discussed in their order.

1. *As to limitations.* The assessment which is the basis of the asserted liability was made May 21, 1932, for the taxable year 1929. The applicable period of limitations is therefore to be found in the Revenue Act of 1928. See sections 275 and 276(c), 45 Stat. 856, 857, 26 U.S.C.A. § 275, 276(c). Section 276(c) reads as follows:

"(c). *Collection after assessment.* Where the assessment of any income tax imposed by this title [chapter] has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax * * *." See United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984.

■ The original bill of complaint in this case was filed May 21, 1938. The defendants contend that this was one day too late because they say the computation of the six years is made to run *"after the assessment of the tax"* (which is an *event),* and not after the *day or date* of the assessment of the tax. This distinction between a limitation running from a day and from an event is not without support from some of the earlier decided cases; see particularly Griffith v. Bogert, 18 How. 158, 15 L.Ed. 307; Arnold v. United States, 9 Cranch 104, 120, 3 L.Ed. 671; Dutcher v. Wright, 94 U.S. 553, 24 L.Ed. 130. According to these earlier cases, as was said by Mr. Justice Story in Arnold v. United States, 9 Cranch 104, 120, 3 L.Ed. 671:

" * * * it is a general rule, that where the computation is to be made from an act done, the day on which the act is done is to be included."

If this rule were still to be followed the suit would have been filed one day too late. But the later cases generally have departed from the distinction, and in computing the time in such a case as we have here, *exclude* the day on which the event occurred, but include the day on which the suit is filed. The law is summarized in 62 C.J. 988 as follows:

"In most jurisdictions, however, that distinction is at present disregarded on the ground that, as a day is an indivisible point of time, an act and the day on which it is done are co-extensive, and that, therefore, where a period of time is to be computed from or after a specified act or event, as a general rule, the day of the act or event is excluded and the last day of the period included, in accordance with the general rule of exclusion and inclusion, and in some jurisdictions this rule is prescribed by statute."

■ The rule for the federal courts, at least in similarly worded taxing statutes, was determined by the Supreme Court in Burnet v. Willingham L. & T. Co., 282 U.S. 437, 51 S.Ct. 185, 75 L.Ed. 448, in accordance with the general trend of the later authorities. In that case the tax limitation statute provided that the assessment might be "within four years after the return was filed". Mr. Justice Holmes, writing the opinion for the court, said:

"When we say 'four years after the return was filed' by common usage we think of four years after the day on which the return was filed and it would seem Congress was following common usage. * * * The fiction that a day has no parts is a figurative recognition of the fact that people do not trouble themselves without reason about a nicer division of time."

It was accordingly held in that case that where the return was filed on March 15, 1922, the assessment could properly be made on March 15, 1926. I regard the decision in that case as controlling authority here to the effect that the suit was filed on the last day of the permissible six-year period; and the suit was therefore not barred by limitations. See also New Federal Rules of Civil Procedure, Rule 6(a), 28 U.S.C.A. following section 723c.

■ It is next contended by the defendants that, even if the original bill was filed within time, the amendment thereof, not filed until June 1, 1938, is barred; the argument being that as the original bill in equity was deficient on general equity grounds, it was a nullity so far as barring the statute was concerned, and therefore the amended bill, if sufficient in its allegations to make out a prima facie case, was barred by the

statute. But I do not think this point is tenable because amendments in federal pleading are liberally allowed under the statute (28 U.S.C., § 777, 28 U.S.C.A. § 777; Gen.Equity Rules Nos. 19 and 28, 28 U.S.C.A. following section 723), and the amendment did not substantially change the nature of the case, but only sought to make some improvement in the pleading thereof. It did not introduce a new cause of action. Maty v. Grasselli Chemical Co., 303 U.S. 197, 58 S.Ct. 507, 82 L.Ed. 745; Bemis Bros. Bag Co. v. United States, 289 U.S. 28, 33, 53 S.Ct. 454, 456, 77 L.Ed. 1011; United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619; S. H. Kress & Co., Inc., v. Reaves, 4 Cir., 85 F.2d 915; Shields v. Barrow, 58 U.S. 130, 17 How. 130, 15 L.Ed. 158; Armstrong Cork Co. v. Merchants' Refrigerating Co., 8 Cir., 184 F. 199.

■ II. *Sufficiency of allegations as to fraudulent transfers.* General Equity Rule 25, 28 U.S.C.A. following section 723, in prescribing what should be the contents of the bill of complaint, states, among other things, that it shall contain "a *short and simple* statement of the *ultimate facts* upon which the plaintiff asks relief, omitting any mere statement of evidence." (Italics supplied.) The amended bill in this case fails to conform to this requirement. It consists of 15 typewritten pages containing 46 separate paragraphs and 10 prayers for relief. All the allegations with respect to fraudulent transfers are made on information and belief alone. But the more substantial objection relates to the generality and indefiniteness as to time and subject matter of the transfers, and the failure of the bill to specify what particular property of the taxpayer corporation was transferred to the several defendants either jointly or singly.

In general, the bill alleges that the Federal Finance and Audit Corporation was organized on February 3, 1923, by Guil Barber, Elizabeth F. Barber, and one T. C. Fuller (the latter not a defendant), with capital stock of the par value of $500,000; and that 4,010 shares of its stock of the par value of $401,000 were issued, 2,010 shares to Guil Barber and 2,000 shares to Elizabeth F. Barber, in payment for existing contracts "for services to be rendered in connection with securing refunds of internal revenue taxes for various taxpayers which contracts were valued by said defendants at $384,441.41, together with tangible assets of $16,558.53"; that said corporation collected during 1923, $258,443.25 on said contracts; that the corporation was at all times in substance owned solely and entirely by the defendant Guil Barber, and managed by him through the agency of the defendants Elizabeth F. Barber, his wife, and Leight F. Barber and William Byrd Barber, his children; and that they entered into a secret agreement to wilfully and fraudulently evade the payment of tax liability of the corporation and of the individual defendant, Guil Barber, by liquidating the assets of the corporation over a period of years by means of fictitious and fraudulent transfers of good and valuable assets and the substitution therefor of valueless assets; and that Guil Barber with the assistance of the other named defendants, his wife and sons, "withdrew over a period of years from the Federal Finance and Audit Corporation over $100,000 in cash assets, replacing them with the defendant, Guil Barber's personal unsecured notes"; that Guil Barber was legally insolvent; and that the corporation transferred to Elizabeth F. Barber "stock held by it with a cost value of more than $100,000 and received in lieu thereof Elizabeth Barber's personal unsecured note". The time when these transfers were made is not very clearly stated in the bill but seems to have been in or about the month of January 1926 which it will be noted was six years *before the tax assessment was made*, which constitutes the basis of liability in this case.

It is then further alleged that the notes of Guil Barber and Elizabeth F. Barber given to the corporation in exchange for assets of the corporation (apparently in 1926) were after May 1932 charged off the books of the Federal Finance and Audit Corporation as worthless. The bill then states that "notwithstanding the constant fraudulent removal of valuable assets and the substitution therefor of valueless assets, the Federal Finance and Audit Corporation in 1932 had sufficient assets to satisfy the complainant's claim". In view of the latter allegation it is not readily apparent how or why the history of the corporate financial affairs prior to May 1932 is relevant or important in this case. The bill then alleges in paragraph 27 (and this is seemingly the most specific allegation of transfers subsequent to the tax assessment) as follows: "That the complainant is informed and believes and therefore avers that after May 1932, the Federal Finance and Audit Corporation's assets were reduced by means of false and fraudulent transfers and false and fraudulent salary pay-

ments to the officers of the corporation, up to and including the taxable year 1936, in the sum of $130,757.55; that all of these assets were worthless and consisted mainly of unsecured personal notes of the defendants, Guil Barber and Elizabeth F. Barber". It will be noted that this paragraph entirely fails to state with any particularity what assets of the corporation were so dissipated after May 1932, and neither does it allege with any clearness to which of the defendants fraudulent transfers were made other than the more general allegation in the succeeding paragraph 28 that what was done was primarily for the benefit of the defendant Guil Barber.

The bill then proceeds to allege with respect to the corporate defendant, the American Fidelity Loan Corporation, that it was organized under the laws of the State of Maryland by Guil Barber who transferred to it a large amount of the assets belonging to the Federal Finance and Audit Corporation, and that securities, bonds and stocks of the American Fidelity Loan Corporation were distributed to Elizabeth F. Barber, Leight Barber and William Byrd Barber. When these transfers were made to the American Fidelity Loan Corporation and its securities transferred to other individual defendants cannot be determined from the averments of the bill. Furthermore the bill is expressed to be a proceeding *in rem* but fails to describe with any legal certainty (with minor exceptions) the property against which it proceeds.

The prayers of the bill are to establish a trust in the property so fraudulently transferred in fraud of the Government as a creditor; that the defendants be declared trustees of said property for the benefit of creditors; that the defendants be required to turn over to the court the property so fraudulently transferred, and that an accounting be had by the court as to the assets; that the defendants be enjoined from disposing of the assets · or transferring them, and that the American Fidelity Loan Corporation "make full discovery of the matters hereinbefore stated and to produce at a time and place certain of said books, records, documents and writing for inspection by the plaintiff or its representatives" (but without describing the books demanded); that the other defendants be required "to make full discovery of the matters hereinbefore stated and to produce at a time and place certain of said books, records, documents and writings for inspection by the complainant or its representative"; and for other relief.

The case as made by the bill would seem to be remarkable in that such an elaborate fraud had been perpetrated by a corporation with such large and substantial assets (apparently hundreds of thousands of dollars in value) to escape a tax liability of only about $4,000. For the purpose of the present proceeding (a motion to dismiss) the averments of the bill that there was a fraudulent attempt to evade taxes should be accepted; but the subject matter as alleged would certainly seem to be capable of more particular statement than is revealed by the general and quite indefinite allegations as to the property, and the time and circumstances of the fraudulent transfers. When it is noted that all the allegations of the bill in this respect are based only on information and belief, it is inferable that the vagueness and indefiniteness of the bill is probably attributable to the uncertainty of information on the part of its draughtsman. If there exists in this respect a case that is capable of more definite and certain allegations, a second amendment of the bill can properly be allowed and made. But as it now stands, it is in my opinion too vague, indefinite and uncertain with respect to the subject matter to require an answer from the defendants. As the proceeding is stated to be one *in rem* to impress a trust upon particular property, there ought to be, in accordance with the General Equity Rule above referred to, "a short and simple statement of the ultimate facts". Particularly the pleader should allege with respect to (1) time and (2) which of the defendants, (3) what property was originally so fraudulently transferred to them and (4) so far as may be known, where this particular property now is, or into what it has been converted. Until the bill is so amended it would seem difficult for each of the defendants to know just what he is called upon to answer, and would also be difficult for the court to know just what is to be tried.

III. *Was the assessment void?* It appears from the bill that on March 15, 1930 the Federal Finance and Audit Corporation filed its income and profits tax return with the Collector of Internal Revenue of Maryland, for the taxable year

1929, showing a tax due in the amount of $1,049.44, which was then paid; but upon review and audit the Commissioner of Internal Revenue determined a deficiency of $3,503.10, together with $458.87 interest, and on March 7, 1932, notified the taxpayer of the deficiency and of his intention to assess the amount. Thereafter on May 7, 1932 (61 days after the notice), the taxpayer filed with the United States Board of Tax Appeals an appeal from the Commissioner's determination; this appeal was dismissed by the Board of Tax Appeals on July 22, 1932 "for lack of jurisdiction because of failure to file said petition within the period allowed by the applicable statute". In the meantime, while the appeal was so pending before the Board of Tax Appeals, the Commissioner on May 21, 1932, made the assessment as proposed. It is alleged the Commissioner made the assessment because the appeal was not filed within sixty days from the notice given by him. It is contended on behalf of some or all of the defendants that the assessment so made was void because the Commissioner was not authorized or permitted to make the assessment while the appeal was pending before the Board, even though it was subsequently dismissed for lack of jurisdiction by reason of being filed one day later than permitted by the applicable statute.

The question so raised requires a construction of several sections of the Revenue Act of 1928. See sections 271, 272, 277, 402, 504, 26 U.S.C.A. §§ 271, 272, 277, 475. Section 272 (a) provides (45 Stat. 852, etc.):

"(a) *Petition to Board of Tax Appeals.* If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this title [chapter], the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within 60 days after such notice is mailed (not counting Sunday as the sixtieth day) the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency. No assessment of a deficiency in respect of the tax imposed by this title and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 60-day period, nor, if a petition has been filed with the Board, until the decision of the Board has become final." 26 U.S.C.A. § 272(a).

Section 272(c) provides:

"(c) *Failure to file petition.* If the taxpayer does not file a petition with the Board within the time prescribed in subsection (a) of this section, the deficiency, notice of which has been mailed to the taxpayer, shall be assessed, and shall be paid upon notice and demand from the collector." 26 U.S.C.A. § 272(c).

Section 277 provides:

*"Suspension of running of statute.*

"The running of the statute of limitations provided in section 275 or 276 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under section 272(a)) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Board, until the decision of the Board becomes final) and for sixty days thereafter." 26 U.S.C.A. § 277.

These sections of the 1928 Revenue Act provide the income tax administrative procedure where the taxpayer, when notified of a proposed deficiency assessment by the Commissioner, elects to appeal to the Board of Tax Appeals rather than pay the tax and sue for its recovery in the district court. He is allowed 60 days after the notice of the proposed deficiency assessment, *is mailed* to file his petition with the Board of Tax Appeals; and during this 60-day period the Commissioner is not permitted to make an assessment; and no assessment may be made "if a petition has been filed with the Board until the decision of the Board has become final". (Certain exceptions not here material are provided in section 272(a).) If the taxpayer "does not file a petition with the Board within the time prescribed in subsection (a)", then the Commissioner shall make the assessment. The running of the statute of limitations with respect to the time of making the assessment is suspended for the period during which the Commissioner is prohibited from making the assessment and "in any event, if a proceeding in respect of the deficiency is placed on the docket of the Board, until the decision of the Board becomes final", and for sixty days thereafter. (Sec. 277.)

It is the contention of counsel for the Government in this case that the sus-

pension of the power of the Commissioner to make the assessment never becomes operative unless the petition is filed with the Board within sixty days "after such notice is mailed (not counting Sunday as the sixtieth day)"; and therefore, even though the petition is filed with the Board *before* the Commissioner makes an assessment and is placed on the docket of the Board, its pendency before the Board *does not suspend* the power of the Commissioner to make the assessment while the case is so pending. The construction of the several sections of the statute in this respect is possibly not free from all doubt; but in my opinion the better construction of the several sections taken together is as follows: (1) If the petition is not filed with the Board within sixty days after the notice, the Commissioner may forthwith thereafter make the assessment; but (2) if the Commissioner does not make the assessment before the petition is filed with the Board, then he may not thereafter make it while the case is pending before the Board even though (3) the Board subsequently dismisses the petition for want of jurisdiction because the petition was not filed in time. It is apparent that the question as to whether the petition was or was not filed in time may raise either a question of law, on the application of the statute to admitted facts (very much like the question first discussed above as to the time for filing the suit in this case), or a question of fact as to when the notice by the Commissioner was mailed to the taxpayer, or when the petition was filed with the Board. See Chambers v. Lucas, 59 App.D.C. 327, 41 F.2d 299; Reliance Mfg. Co. v. Blair, 7 Cir., 19 F.2d 789; Appeal of Southern California Loan Ass'n, 4 B.T.A. 223. The construction of the statute contended for by the Government would result in giving the Commissioner the power to decide such disputed questions of law or fact, and to take it away from the Board which might decide to the contrary. On the other hand, the construction indicated as proper harmonizes the several sections of the statute when read together. It permits the Commissioner to make the assessment at once after the sixty days, when no petition has been filed with the Board, and if it is not made until the petition is filed, ample time is given to make it after the Board has dismissed the appeal to it; and pending the appeal the taxpayer is relieved from the necessity of otherwise litigating the assess-

ment with the Commissioner. See United States v. Yellow Cab Co., 7 Cir., 90 F.2d 699. And where time is of the essence, a jeopardy assessment is always possible. Revenue Act of 1928, § 273, 45 Stat. 854, 26 U.S.C.A. § 273.

The particular question has been heretofore decided in principle in accordance with the view just expressed, by the Second Circuit in the case of American Equitable Assur. Co. v. Helvering, 68 F.2d 46. In that case the petition to the Board of Tax Appeals was filed within 60 days after the notice, but was executed, not by the taxpayer, but by a corporation which under contract had agreed to pay the taxpayer's taxes. While the petition was pending before the Board, and before it was dismissed for lack of jurisdiction because not filed by "the taxpayer" as required by section 272(a), the Commissioner made an assessment. It was held that the power of the Commissioner to make the assessment and also the running of limitations as to the time of the assessment was *suspended* while the proceeding was pending before the Board, even though it was subsequently dismissed for lack of jurisdiction, the Court saying (page 47):

"Even though the Board dismissed this proceeding, as it did in this case, for want of jurisdiction (and we now have nothing to say about the correctness of that decision) the placing of the proceeding upon its docket gave it whatever right to act is involved in determining whether or not the petition was sufficient to give it jurisdiction to decide the matter on the merits. At any rate, a proceeding had been commenced which required the Board of Tax Appeals to make a decision though not necessarily on the merits. * * *

"As we hold that the statute of limitations was suspended by the proceeding placed on the docket of the Board, it becomes necessary to determine whether the taxes were lawfully assessed against the Norwegian Company. They were assessed on March 11, 1928, and, as the Board did not dismiss the petition until June 11, 1929, they were assessed while the proceeding was pending before the Board and during the time the Commissioner was *prohibited from making the assessment by section 274(a) of the 1926 act.*" (Italics supplied.)

It was further held by the court under the facts of the particular case that nevertheless the assessment was sustainable as a jeopardy assessment, as provided for in the

statute. In the present case it is not alleged in the bill of complaint that the assessment made by the Commissioner on May 21, 1932 was a jeopardy assessment, although possibly this may be shown by amendment. The principle of the decision in the American Equitable Case therefore seems to be directly applicable here and is authority for the proposition that the assessment in this case was void. See, also, Ventura Consol. Oil Fields v. Rogan, 9 Cir., 86 F.2d 149. The American Equitable Case was followed by the Board of Tax Appeals in a later decision, Parker v. Commissioner, 30 B.T.A. 342, 349, and also by the Second Circuit itself in a per curiam opinion in Use Battery Corp. v. Commissioner, 84 F.2d 1020, certiorari denied 299 U.S. 593, 57 S.Ct. 118, 81. L.Ed. 437.[1] Counsel for the Government argue that what was said in the American Equitable Case as to the suspension of the power of the Commissioner to assess during the pendency of the case before the Board was only *dicta*. It seems to me to have been necessary to the decision, but apart from that, it is at least persuasive if not imperative authority here. It has been customary in this court to follow the decision of any Circuit Court of Appeals where it is the only decision in point, and is not inconsistent with other federal decisions of equal or greater authority.

At the hearing of the case, in response to the inquiry as to what had been the administrative practice in the making of assessments by the Commissioner during the pendency of the taxpayer's petition to the Board of Tax Appeals, when the petition was not filed within sixty days after mailing the notice, it is stated in the Government's brief that prior to July 11, 1935, it had been the general practice of the Commissioner to make the assessments while the case was pending before the Board; but that on July 11, 1935, the practice was changed and now assessments in such cases are not made until after the decision of the Board becomes final except where a jeopardy assessment is justified, and possibly also in other exceptional cases, the nature and reason for which are not stated. The reason for this seemingly important change in the general practice is not definitely stated, but it is apparently the view of the Treasury Department that it was not due to the decision of the American Equitable Case and should not be considered as an implied recognition that the Commissioner is prohibited from making the assessment while a petition is pending before the Board, if actually not filed within the sixty days. It does not appear to have been due to an amendment of the statute in 1934. See 26 U.S.C.A. § 272.[2]

---

[1] The American Equitable Case has also been cited in note 2 of Hulburd v. Commissioner, 296 U.S. 300, on page 307, 56 S.Ct. 197, on page 201, 80 L.Ed. 242, and in note 2, page 994, Ætna Life Ins. Co. v. Maxwell, 4 Cir., 89 F.2d 988, and in Helvering, Commissioner, v. Wheeling Mold & Foundry Co., 4 Cir., 71 F.2d 749, 752, although on other points in the case than the one particularly above referred to.

[2] In the appendix to the Government's brief there is copied a letter dated July 11, 1935 (IT:RR–TEM) from Charles T. Russell, Deputy Commissioner of Internal Revenue, to Mr. T. F. Langley, Head Clearing Division (income tax unit) which authorized the change in practice. In the letter reference is made to section 277 of the Revenue Acts of 1928, 1932 and 1934, 26 U.S.C.A. § 277, which suspends the running of the period of limitations with respect to the making of an assessment where a petition has been filed with the Board, and particularly with regard to the parenthetical clause therein reading:

"(and in any event, if a proceeding in respect of the deficiency is placed on

the docket of the Board, until the decision of the Board becomes final)".

And in calling attention to this parenthetical clause, which was first inserted in the Revenue Act of 1928, the letter also calls attention to the report of the Committee on Finance of the Senate, No. 960, dated May 1, 1928, in which the comment on section 277 of the Internal Revenue Bill of 1928 was in part as follows:

"Under existing law and under the provisions of the bill, the running of the limitation period on assessments is suspended while an appeal is pending before the Board. Subsequently the Board may dismiss the appeal on the ground that the petition was not filed within the sixty-day period, or, for example, because the paper filed within the period was not sufficient to constitute a petition. The decision dismissing the appeal may not be made until months after a proceeding was begun and there is some question whether, in such cases, the statute of limitations on assessment is actually suspended during the pendency of the proceeding. It is specifically provided in section 277 that the limitation

I reach the conclusion of law that the motions to dismiss the bill must prevail for the reasons above indicated; but if counsel for the Government can properly amend the bill to show the prima facie validity of the assessment and to make sufficiently definite and certain the charges as to transfers as above indicated, leave to file such an amendment may be applied for in twenty days.

period shall be suspended, if any proceeding is placed on the docket of the Board, until the decision of the Board in respect thereto becomes final and for sixty days thereafter."

The letter then adds:

"It is clear from the foregoing that it was the intent of Congress in enacting section 277 of the Revenue Acts of 1928, 1932 and 1934, that in any cases where a proceeding in respect of deficiency determined to be due under any of the aforementioned acts is filed after the time prescribed in section 272(a) and is placed upon the docket of the Board, the stat-

ute of limitations on assessment is suspended until the decision of the Board becomes final and for sixty days thereafter. Accordingly, in any such case where it does not appear that collection of the tax is otherwise jeopardized the assessment of the deficiency may await the final decision of the United States Board of Tax Appeals."

Reference may also be made to House Report No. 1, 69th Congress, 1st Session, and Senate Report No. 52, 69th Congress, 1st Session, relating generally to the same subject matter.