**LYDDON & COMPANY (AMERICA) INC.**

v.

**UNITED STATES.**

No. 13–53.

United States Court of Claims.

March 5, 1958.

As Amended May 7, 1958.

Meyer Grouf, New York City, for plaintiff. Harold Manheim and Robert Braunschweig, New York City, were on the briefs.

William T. Kane, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Lyle M. Turner, Washington, D. C., and Robert Livingston, Washington, D. C., were on the brief.

MADDEN, Judge.

The plaintiff sues for the recovery of $117,149.20 of excess profits taxes and interest collected from it for its fiscal years 1942, 1943, 1944 and 1945, together with interest thereon. The ground for its motion is that, it asserts, the taxes were never assessed against it, and were collected after the statute of limitations had made assessment impossible. The plaintiff relies on section 3770(a) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3770 (a) (2), which says:

"Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim."

The plaintiff's claim for refund and its suit in this court were timely.

The plaintiff claimed that it was not subject to the excess profits tax because of the relation of its business to foreign commerce. This motion is not concerned with the merits of that claim. Because it claimed to be exempt from the tax, it filed, for the years here in question, the Government's printed forms for excess profits tax returns, but filled in only its name and address and the words "see rider attached" or, "see explanation on page 2 hereof." On a separate rider, or in a blank space on page 2 of the form, it stated that it was not subject to the excess profits tax and gave the reason for that position.

A revenue agent, in examining a similar filing of the plaintiff for 1941, disallowed that claim and the plaintiff was subsequently advised by counsel that it might get into difficulties because of failure to file a return. Thereupon on February 19, 1946, the plaintiff filed "amended excess profits tax returns" for each of the years here involved. These returns were completely filled out with all the information necessary to compute the excess profits tax, and with the computation showing the amount of the tax. Inside each one was attached a rider claiming exemption from the tax and giving reasons for the exemption. With each return was a letter asserting the claim to exemption, quoting the rider which was inside the return, and stating that the claim of nonliability was the reason why no remittance accompanied the return.

As we have said, these "amended returns" were filed on February 19, 1946. On the March 1946 assessment list, the Commissioner purported to assess taxes and interest against the plaintiff on the basis of the figures and computations shown on the forms which the plaintiff had filed. On May 6 of the same year the plaintiff received a notice of the assessment for each of the years, which notice stated the amount of each assessment, and made demand for its immediate payment.

On November 26, 1946, the plaintiff by letter protested the action of the

Commissioner in purporting to assess the taxes and interest without giving the plaintiff a 90-day deficiency notice as provided in section 272 of the 1939 Internal Revenue Code. Similar protests were made on December 9, 1946, and May 24, 1948.

Section 272 authorizes the Commissioner, if he determines that there is a deficiency, to send a taxpayer by registered mail a notice of the deficiency. It authorizes the taxpayer, at any time within 90 days from the day the deficiency letter is mailed, to petition the Tax Court for a redetermination of the deficiency. It then says:

> " * * * No assessment of a deficiency in respect to the tax imposed by this chapter and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such ninety-day period, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 3653(a) the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court. * * * "

The plaintiff says that since no 90-day deficiency notice was ever sent to it, and since section 272 says that "No assessment of a deficiency * * * shall be made * * * until such notice has been mailed * * * nor until the expiration of such ninety-day period * * *," the taxes here in question were never assessed, and were collected at a time when they could no longer have been assessed because the statute of limitations had run.

█ When one files a tax return showing taxes due, he has, presumably, assessed himself and is content to become liable for the tax, and to pay it either when it is due according to the statute, or when he can get the money together. At any rate he shows no desire to resort to the Tax Court to contest the assessment. The Commissioner has no occasion to determine a deficiency and give the taxpayer notice of it, since at that stage, and until an audit shows something different, the taxpayer's own computation of his taxes may be taken as correct. The only notice which will be sent to the taxpayer will be a notice that the taxes shown to be due by his return should be paid immediately, with appropriate interest.

█ When a taxpayer, as did the plaintiff, furnishes, on the conventional form, the necessary information, and makes the necessary computation to determine the amount of the tax, but accompanies this return with a claim that no taxes are owing, for a stated reason, how should the Commissioner treat this filing? It he treats it as no return, and seeks to attach to it the painful consequences of a failure to file a return, that seems unfair to the taxpayer, who has been completely frank with the Commissioner. If he treats it as an ordinary return, and the lack of an accompanying check as a mere failure to pay the tax shown by the return to be owing, it is not a case for the determination of a deficiency, and a 90-day notice to the taxpayer that unless he petitions the Tax Court within the 90 days, the deficiency will be assessed and collected. The deficiency referred to in section 272 is, ordinarily at least, a shortage arising out of circumstances not disclosed in the return.

The plaintiff's filing, done purposely in the form it was in to avoid the penalties of failing to file a return, is a document to which it is somewhat difficult to assign a definite classification. Both parties were aware, throughout their dealings extending through many years, of all the relevant facts, and of the contention of the plaintiff that the taxes had never been validly assessed. The purpose of the procedure prescribed by section 272 is not, however, merely to assure

the taxpayer of notice of impending action by the Commissioner. Its purpose is also to give the taxpayer the opportunity to try to prevent the assessment by petitioning the Tax Court, instead of raising the money, if he can, paying the tax, and later suing for a refund in a court having that jurisdiction.

In the instant case, if the Commissioner had treated the taxpayer's disclaimer of liability as showing a deficiency, and had mailed it a 90-day letter, the taxpayer could have gone to the Tax Court and tried out the validity of its claim of exemption. Without the 90-day letter it could not resort to that court. That may have been a hardship in the plaintiff's case. In protesting the Commissioner's alleged failure to make an assessment, it reminded him that he was thereby denying it the right to resort to the Tax Court.

The Government urges that the plaintiff was, by section 272, given another avenue of relief just as good as resort to the Tax Court. It points out that, in the plaintiff's situation, it could have sought an injunction in a United States District Court. The plaintiff says that that would not have been an equivalent remedy because, to obtain an injunction, it would have had to give a bond to assure the Government against loss from the delay in collecting the tax. There is some merit in this contention. This court's decision in Lehigh Portland Cement Co. v. United States, 30 F.Supp. 217, 90 Ct. Cl. 36, tends to support the Government's position on the injunction question.

The Government relies on the asserted principle that in a suit for the refund of taxes the ultimate question is whether the plaintiff overpaid its taxes. It quotes from Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293, as follows:

"An overpayment must appear before refund is authorized. Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded."

In Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, the Court said that a suit to recover taxes erroneously paid is the lineal successor of the *indebitatus assumpsit* count in a common law declaration; that statutes authorizing suits for the refund of taxes are predicated upon the same equitable principles that underlie that common law action; and that it is open to the defendant to show any state of facts which, according to equitable standards, would deny the right of recovery. In Thomaston Cotton Mills v. Rose, 5 Cir., 1933, 62 F.2d 982, the court applied this doctrine in a case where the Commissioner made the assessment immediately without waiting for the expiration of the period for petitioning the Board of Tax Appeals.

■■ The universal application of a principle that one cannot have a refund of taxes unless he has overpaid his taxes would contradict section 3770(a) (2), quoted above. That section expressly says that any tax assessed or paid after the expiration of the period of limitation applicable thereto shall be refunded. We must therefore determine whether the statute of limitations had run against the assessment of this tax, at the time it was paid. The Commissioner's action in assessing the tax on the computation shown by the plaintiff's return was understandable, since the plaintiff's filing was, at best, an ambiguous one. Why, in the face of repeated protests, the Commissioner persisted in refusing to take the plaintiff at its word and issue a 90-day letter, we don't know. But we think the Commissioner's purported assessment, and the immediate notice of it to the plaintiff, stopped the running of the statute of limitations.

The purported assessment was, we think, not a complete nullity. In the case of Lehigh Portland Cement Co. v. United States, supra, 30 F.Supp. 217, 90 Ct.Cl. at page 60 ff., this court considered the problem of the consequences of a premature assessment which, as in the in-

stant case, did not bring about any overpayment of taxes. The court decided that a premature assessment is not void; that Congress, by expressly providing that the taxpayer may obtain an injunction against the collection of the tax until an unexceptionable assessment has been made, has safeguarded the taxpayer from any possible harmful consequences of the premature assessment. The court analyzed and discussed the cases of Ventura Consolidated Oil Fields v. Rogan, 9 Cir., 1936, 86 F.2d 149; United States v. Yellow Cab Co., 7 Cir., 1937, 90 F.2d 699; and United States v. Barber, D.C., 24 F.Supp. 229, and declined to follow those cases in their conclusions that a premature assessment is void and enables a taxpayer to recover taxes which he in fact owed the Government.

We recognize that in the Lehigh Portland Cement Company cash there was no equity at all in the taxpayer's favor. The reasoning of the court in that case is nevertheless applicable to the instant one, and we adhere to that reasoning. We conclude, therefore, that the purported assessment made by the Commissioner of Internal Revenue in March 1946, assuming that it was not a wholly valid assessment, was not void, and was, in the circumstances, sufficient to stop the running of the statute of limitations which limits the time within which taxes may be assessed. It follows that the taxes here in question were not refundable under the provisions of section 3770(a) (2). We conclude that the taxes were paid before the expiration of the statute of limitations, and they cannot be recovered, unless they were, on the merits, not owed by the taxpayer.

■ Section 3770(a) (2) is a drastic statute, in derogation of the common law in its provision that one who pays a debt which he owes, but the collection of which is barred by the statute of limitations, may recover the money paid. We think Congress would not have intended that a broad interpretation should be given to the statute of limitations, in order to place a payment of taxes within the reach of section 3770(a) (2).

The plaintiff's motion for summary judgment is denied, and plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LITTLETON, Judge, concur.

LARAMORE, Judge.

I respectfully dissent for the following reasons:

Section 272(a) (1) requires that the Commissioner issue a 90-day letter before assessment of a deficiency. I think this section is mandatory. Any other interpretation would prevent taxpayer from seeking relief in the Tax Court.

In the Lehigh case, relied upon by the majority, the taxpayer did have the statutory notice of deficiency and had the right to appeal to the Board of Tax Appeals, now the Tax Court. In the present situation, plaintiff was completely foreclosed from resorting to the Tax Court unless it filed injunction proceedings in the proper court.

It seems to me that the failure to exercise a right to enjoin an invalid assessment could not of itself make an invalid assessment valid.

There can be no question that if the assessments here involved were void and of no effect, the statute of limitations has run and under section 3770(a) (2) plaintiff is entitled to a refund.

I would grant plaintiff's motion for summary judgment.

WHITAKER, Judge, joins in the foregoing dissent.