JOSIAH SIDDONS GRIFFITH, JAMES S. CHEW, AND MARY E. CHEW, HIS WIFE, PLAINTIFFS IN ERROR, *v.* JOHN B. BOGERT, ABRAHAM MYER, AND THADDEUS SMITH.

The law of Missouri allows the lands of a deceased debtor to be sold under execution, but prohibits it from being done until after the expiration of eighteen months from the date of the letters of administration upon his estate.

Where the letters of administration were dated on the 1st of November, 1819, and the sale took place on the 1st of May, 1821, the sale was valid. In this case the *terminus a quo* should be included.

Moreover, the sale was ordered to take place on that day by a court of competent jurisdiction, and this makes the matter *rem judicatam*, and is evidence of the construction which the courts of Missouri place upon their laws.

And, besides, the question of the regularity of a judicial sale cannot be raised collaterally, except in case of fraud, in which the purchaser was a participant.

· THIS case came up by writ of error, from the circuit court of the United States for the district of Missouri.

The case is stated in the opinion of the court.

It was argued by *Mr. Crittenden*, for the plaintiffs in error, and *Mr. Geyer*, for the defendants.

Those of *Mr. Crittenden's* points, which were included in the decision of the court, were the two following:—

1. Because the judgments themselves were void, so far as they related to, or affected the lands, tenements, or hereditaments of the intestate; or, if not, that the executions issued thereon, dated respectively, the 28th of February, and 9th of April, 1821, under or in virtue of which the sheriff sold the land in question, were illegal, null and void, because issued before the expiration of eighteen months from the date (1st of November, 1819,) of the letters of administration of the estate of said intestate, and were therefore issued in direct violation of the express provisions of the before-recited act of the 25th of January, 1817; 8 Metcalf, 502.

2. Because the sale, in virtue of which said deed purports to have been executed, was made on the 1st day of May, 1821, and before the expiration of eighteen months from the date, (1st of November, 1819,) of the said letters of administration, contrary to the express terms of the said act of 1817, and was, therefore, illegal and void.

The only questionable part of this proposition is, whether the 1st of May, 1821, is a day after the expiration of eighteen months from the 1st of November, 1819, or included in, and part of the period. The reasonable and legal rule of computation of time in such cases, is to exclude the first day, that is, the day of the event or act from which the computation is to be made. It is but the fraction of a day, and the law takes no notice or account of it. This is believed to be the rule as now settled by judicial discussions in Missouri. Gantly *v.* Ewing, 3 How. 707; Kennon *v.* Osgood, 19 Mo. R. 60; Blaine *v.* Beehler, 12 Mo. R. 477.

Upon the principal point in the case, *Mr. Geyer* said:—

The sale was made on the 1st of May, 1821, which was after the expiration of eighteen months, from the death of the intestate, or the date of the letters of administration, (1st of November, 1819,) construing the act of 1817 according to the rules and principles which have been recognized and applied in analogous cases.

It has been laid down in many cases as a general rule, that where time is to be computed from an event or an act, the day of the event or the performance of the act is to be included.

Norris *v.* The Hundred of the Gawthry, Hobart, 139; King *v.* Adderly, Douglass, 463; Castle *v.* Burdett, 3 Term R. 623; Glassington *v.* Rawlings, 3 East, 407; Priest *v.* Tarlton, 3 N. H. Rep. 93; Thomas *v.* Afflick, 16 Pa. R. 14; Robinet *v.* Compton, 2 La. An. R. 856; Pierpoint *v.* Graham, 4 Wash. C. C. Rep. 232; Arnold *v.* United States, 9 Cranch, 104.

In some cases, the rule has been held to be, to exclude the day of the act or event from the computation; in others, the day has been excluded without laying down any general rule. King *v.* Cumberland, 4 Nov. and M. 375; Judd *v.* Fulton, 10 Barl. 117; Wing *v.* Davis, 7 Maine, 31; *Ex parte v.* Deane, 2 Cowen, 605; Cornell *v.* Moulton, 3 Denio, 12; Snydor *v.* Warren, 2 Cowen, 518; S. B. Mary Blane *v.* Beehler, 12 Mo. R. 477; Kimm *v.* Osgood's Administrators, 19 Mo. R. 60.

But it has been denied that there is any general rule, that the day of the act or event from which time is to be computed is to be included or excluded, and held that whether it is to be taken inclusive or exclusive, depends upon the reason of the thing, the context, and subject-matter. Lester *v.* Garland, 15 Vesey, Jr., 248; Dowling *v.* Foxall, 1 Ball & Bealty, 196; Windsor *v.* China, 4 Maine, 298; Bigelow *v.* Wilson, 1 Peck, 485; Presbury *v.* Williams, 15 Mass. 193; Jones *v.* Planters' Bank, 5 Humphries, 619; O'Conner *v.* Towns, 1 Texas, 107.

In the earlier cases, "from the date" was generally held to be inclusive, and "from the day of the date," exclusive, but the doctrine now most generally received is, that there is no difference in the two forms of expression, both meaning the same thing; and in the computation of time on promissory notes and bills of exchange, the day of the date has generally been excluded; in other instances, it is held to be inclusive or exclusive, according to the context and subject-matter. Pugh *v.* Duke of Leeds, Cowper, 714, and cases there cited and reviewed; Rand *v.* Rand, 4 N. H. 267; Moore *v.* Bond, 18 Maine, 142; Wilcox *v.* Wood, 9 Wend. 346.

It appears to have been very generally agreed that either the first or the last day shall be included in the computation, and in no case are both to be excluded or included, unless the contract or statute upon which the question arises will admit of no other construction. *Ex parte v.* Deane, 2 Cow. 605; Thomas *v.* Afflick, 16 Pa. R. 14; Sander's Heirs *v.* Norton, 4 Monroe, 474.

Upon a review of the cases, it appears that there is no general rule in computing time from an act done or an event, or from a date or the day of the date, that the day is to be inclusive or exclusive; but, according to the adjudged cases, whether the day in either case is to be included or excluded, depends upon the reason of the thing, the subject-matter, and the context.

Griffith et al. *v.* Bogert et al.

But the title of a *bonâ fide* purchaser, at judicial sales, is not affected by any irregularities in the proceedings of the officer, or in the process under which he sold; therefore, if the eighteen months limited by the statute had not expired at the time of the sale, under which the defendants hold, the sheriff's deed would not, on that account, be void; at most, it would be voidable, and could be impeached only in a direct proceeding, and not in a collateral action.   All that is necessary to support the title of a purchaser in an action of ejectment, is the judgment, execution, levy, and sheriff's deed.   Jackson *v.* Steinburg, 1 J. C. 153; Jackson *v.* Bartlett, 8 J. R. 361; Jackson *v.* Rosevelt, 13 J. R. 97; Same *v.* Delaney, 13 J. R. 535; Same *v.* Robbins, 16 J. R. 537; Brown *v.* Miller, 3 J. J. Marsh, 439; Lawrence *v.* Sheed, 2 Bibb, 401; Webber *v.* Stith & Cox, 6 Monroe, 101; Day *v.* Graham, 1 Gel. (6 Ill.) R. 435; Swigart *v.* Harber, 4 Scam. 364; Ware *v.* Bradford, 2 Al. R. 676; 19 do. 132; State Bank *v.* Noland, 13 Ark. R. 299; Newton *v.* State Bank, 14 Ark. R. 9; Byers *v.* Fowler, 12 Ark. 218; Wheaton *v.* Sexton, 4 Wheat. 506; Hart *v.* Rector, 7 Mo. R. 531; Reed *v.* Heirs of Austin, 9 Mo. R. 722; Landes *v.* Perkins, 12 Mo. R. 254; Draper *v.* Bryson, 17 Mo. R. 71; Carson *v.* Walker, 16 Mo. R. 68; Robinett *v.* Compton, 2 La. An. R. 856.

All the questions now raised were before the court, which was a court of competent jurisdiction, and its acts cannot now be impeached.   1 Baldwin, 246; 1 Serg. & Rawle, 101; 8 Serg. & Rawle, 397; 2 Pet. 257; 10 Pet. 473; 2 How. 343.

Mr. Justice GRIER delivered the opinion of the court.

The plaintiffs claim the land which is the subject of controversy in this suit, as heirs of Isaac W. Griffith, who died seised of the same in 1819.   His estate was insolvent.   Judgments were obtained against his administrators in 1820, executions were issued thereon, and the property sold by the sheriff.   The defendants claim under the purchaser at this sale.

On the trial, the court below instructed the jury "that the sheriff's deed, read in evidence under the judgments and executions also in evidence, was effectual to devest the title of the heirs of Isaac H. Griffith to the land mentioned in said deed."

It is admitted, that in the State of Missouri the lands of a deceased debtor may be taken in execution, and sold by the sheriff, in satisfaction of a judgment against the administrator. And also that such deed vests in the purchaser all the estate and interest which the deceased had in the property at the time of his death.   But it is alleged that this sale is "without authority of law and void," because the execution was issued and sale made before the time limited for stay of execution against the

14 *

real estate of a decedent.    The law and the facts, on which this
objection to the validity of the sale is founded, are as follows :—

By an act of 1817, it is provided that " all lands, tenements,
and hereditaments shall be liable to be seized or sold upon judg-
ment and execution obtained against the defendant or defend-
ants, in full life, or against his or her heirs, executors, or
administrators, after the decease of the testate, or intestate;
provided, no such land, tenements, or hereditaments, shall be
seized and sold until after the expiration of eighteen months
from the death of such ancestor, or the date of the letters testa-
mentary or letters of administration, and execution may issue
against such lands, tenements, and hereditaments, after the death,
testate or intestate, and after the time aforesaid, in the same
manner as if such person were living."

The letters of administration on the estate of Griffith are
dated on the 1st of November, 1819.    The sale was made by
the sheriff on the 1st of May, 1821, on executions previously
issued.

It is contended that the term of eighteen months from the 1st
of November, 1819, had not expired on the 1st of May,
1821, and consequently the sale was without authority of law,
and void.

But we are of opinion that the assumption on which this in-
ference is based, is not correct; nor the inference correct, if the
assumption were granted.

. If the day on which the letters of administration be counted
in the calculation, the term of eighteen months had "expired"
on the 1st of May, 1821.

Whether the *terminus a quo* should be so included, it must be
admitted, has been a vexed question for many centuries, both
among learned doctors of the civil law and the courts of Eng-
land and this country.    It has been termed by a writer on civil
law (Tiraqueau) the *controversia controversissima*.

In common and popular usage, the day *a quo* has always been
included, and such has been the general rule, both of the Roman
and common law.    The latter admits no fractions of a day;
the former, in some instances, as in cases of minority, calculated
*de momento en momentum*.    The result of this subdivision was
to comprehend a part of the *terminus a quo*.    But in cases where
fractions of a day were not admitted, as in those of usucaption
or prescription, a possession commencing on the 1st of January,
and ending on the 31st of December, was counted a full year.
It was in consequence of the uncertainty introduced on this
subject by the disquisitions and disputes of learned professors,
that Gregory IX., in his decretals, introduced the phrase of " a
year and a day," in order to remove the doubts thus created, as

to whether the *dies a quo* should be included in the term. It thus maintained the correctness of the common usage, while it satisfied the doubts of the doctors.

The earlier cases at common law show the adoption of the popular usage as the general rule, but many exceptions were introduced in its application to leases, limitations, &c., where a forfeiture would ensue. But the cases are conflicting, and have established no fixed rule as to such exceptions. Lord Mansfield reviews the cases before his time, in Pugh *v.* Leeds, Cowp. 714, and comes to the conclusion "that the cases for two hundred years had only served to embarrass a point which a plain man of common sense and understanding would have no difficulty in construing."

The rule he lays down in that case is, "that courts of justice ought to construe the words of parties so as to effectuate their deeds, and not destroy them; and that, 'from' the date, may in vulgar use, and even in strict propriety of language, mean either inclusive or exclusive."

It would be tedious and unprofitable to attempt a review of the very numerous modern decisions, or to lay down any rules applicable to all cases. Every case must depend on its own circumstances. Where the construction of the language of a statute is doubtful, courts will always prefer that which will confirm rather than destroy any *bonâ fide* transaction or title. The intention and policy of the enactment should be sought for and carried out. Courts should never indulge in nice grammatical criticism of prepositions or conjunctions, in order to destroy rights honestly acquired.

In the present case there is no reason for departing from the general rule and popular usage of treating the day from which the term is to be calculated, or *'terminus a quo,'* as inclusive. The object of the legislature was to give a stay of execution for eighteen months, in order that the administrator might have an opportunity of collecting the assets of the deceased and applying them to the discharge of his debts. The day on which the letters issue may be used for this purpose as effectually as any other in the year. The rights of the creditor to execution are restrained by the act, for the benefit of the debtor's estate. The administrator has had the number of days allowed to him by the statute to collect his assets and pay the debts. The construction which would exclude the day of the date is invoked, not to avoid a forfeiture or confirm a title, but to destroy one, obtained by a purchaser in good faith under the sanction of a public judicial sale.

If the statute in question were one of limitation, whereby the remedy of the creditor would have been lost, unless execution

had issued and sale been made within the eighteen months, probably a different construction might have prevailed. Yet, even in such a case, the precedents conflict. (See Cornell *v.* Moulton, 3 Denio, 12; and Presbury *v.* Williams, 15 Mass. 193.)

But, if the correct application of the rule to the present case were doubtful, the fact that this question was raised and decided by the court between the parties to the judgment, and that the court, after considering the question, ordered the sale to be made on the 1st of May, would be conclusive, not only as *res judicata inter partes*, but as evidence of the received construction by the courts of Missouri, which it would be an abuse of judicial discretion now to overturn.

Finally, there is another view of this case which is conclusive, as regards this and all other objections taken by the counsel to the validity of the sheriff's deed. It is the well-known and established rule of law in Missouri and elsewhere, that a judicial sale and title acquired under the proceedings of a court of competent jurisdiction cannot be questioned collaterally, except in case of fraud, in which the purchaser was a participant. (See Grignon *v.* Astor, 2 How. 319.) The cases of Reed *v.* Austin, 9 Mo. R. 722; of Landes *v.* Perkins, 12 Mo. 239; Carson *v.* Walker, 16 Mo. 68, and Draper *v.* Bryson, 17 Mo. 71, show that this principle of the common law is the received and established doctrine of the courts of Missouri.

The sheriff's deed in the present case is founded on a regular judgment in a court of competent jurisdiction, and an execution on said judgment issued by authority of the court, and levied on property subject by law to be taken and sold to satisfy the judgment. The writ authorized the sheriff to sell; a sale was made in pursuance thereof by the sheriff, and a deed executed to the purchaser, which was afterwards acknowledged in open court according to law. At this time, all parties interested could and would have been heard to allege any irregularity in the proceedings that would justify the court in setting it aside. The objections to this sale do not reach the power of the court, or the authority of the sheriff to sell. The issuing of an execution on a judgment before the stay of execution has elapsed, or after a year and day without reviving the judgment, the want of proper advertisements by the sheriff, and other like irregularities, may be sufficient ground for setting aside the execution or sale, on motion of a party to the suit, or any one interested in the proceedings; but when the objections are waived by them, and the judicial sale founded on these proceedings is confirmed by the court, it would be injurious to the peace of the community and the security of titles to permit such objections to the title to be heard in a collateral action.

On every view of the case, we are of opinion that the title of the purchaser is protected by the established rules of law, and that there was no error in the instructions given to the jury by the court below.

The judgment of the circuit court is therefore affirmed.