[Crim. No. 25040. Second Dist., Div. Five. Nov. 29, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFONSA L. HERNANDEZ, Defendant and Appellant.

582

## COUNSEL

Simon Kornbrodt for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Lawrence P. Scherb II and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—Defendant Alphonsa Hernandez was charged with possession of heroin. (Health & Saf. Code, § 11350.) After motions to quash a search warrant and to suppress evidence were made and denied, she pleaded guilty. Proceedings were suspended and defendant was placed on probation on condition that she serve one year in jail.

The sole issue on appeal is the validity of a search warrant and the timeliness of its issuance and service.

### FACTS

The affidavit in support of the warrant, executed by Sergeant Ginder, stated: "On or about April 30, 1973, your affiant H. R. GINDER, Ser. # 6044, met with an informant. The informant stated that a person he knew by the name of Ernest Ochoa was selling heroin from his apartment in El Sereno. The informant stated to your affiant that he has purchased heroin from Ernest Ochoa on numerous occasions, that he calls phone number 222-8840 and that either Ernest Ochoa or his sister Virgie answers the phone. On each occasion the informant then talked to Ernest Ochoa, told Ochoa that he wanted to purchase narcotics, and then Ochoa designated a location to meet for the exchange of the narcotics for cash. On each oc-

casion informant met with Ochoa at the pre-arranged location, and purchased narcotics.

"Your affiant checked phone number 222-8840 through police department facilities and discovered that that phone number was registered to Apt. #9 at 4929 Lynnfield Avenue in the City of Los Angeles.

"On or about May 2, 1973 your affiant met with the informant and had the informant call phone number 222-8840 and asked to purchase heroin from Ernest Ochoa. The deal was made and overheard by your affiant and other officers who were present and who were engaged in the same investigation. Your affiant heard Ernest Ochoa designate a location to meet which was approximately six blocks from the apartment #9 at 4929 Lynnfield Avenue in the City of Los Angeles. . . . [Several officers went to the pre-arranged location. Other officers went to a point where they could observe the apartment.] The latter officers reported via walkie-talkie that they observed Ernest Ochoa leave his apartment, get into a black Chevrolet 2-door, Lic. # GAC 830, and drive to the pre-arranged location. Your affiant observed Ochoa arrive at the pre-arranged location and enter. That location is a bar. . . . [Other officers already inside the bar observed Ernest Ochoa enter and hand something to the informant who left the bar. Keeping the informant in sight, the officers] approached the informant and obtained from him that which had been handed by Ernest Ochoa.

". . . That object was an orange balloon containing a powdery substance. [The substance was heroin.]

". . . . . . . . . . . . . . . . . . . . . .

"In your affiant's opinion, Ernest Ochoa is keeping a supply of narcotics, to wit: Heroin, in apartment #9 located at 4929 Lynnfield Avenue, in the City of Los Angeles. This opinion is based on the affiant's experience with narcotics dealers, and by the fact that Ernest Ochoa was observed continuously as he left apartment #9 located at 4929 Lynnfield Avenue, and traveled directly [without stopping] to the location where a narcotic transaction took place. . . ."

As noted, the initial information was furnished to Sergeant Ginder on April 30, and the first and only contact with Ochoa was made on May 2. The affidavit in support of the warrant was presented to the magistrate on May 14; the warrant was issued the next day, but was not executed until May 23. The address to be searched was not listed in Ochoa's name; rather, Sergeant Ginder learned that the apartment was in defendant's name.

Sergeant Ginder was not asked about the delay from May 2 to May 14 in applying for the warrant. To explain the delay from May 15 to May 23 in executing it, he testified: "Well, we had three other major dope peddlers that we had stakeouts and investigations going on at that particular time, and we were still burdened with the administrative functions that we have to do daily, . . ."

## DISCUSSION

Defendant contends that the warrant should have been quashed, because the affidavit alleged no information from which the magistrate could reasonably infer that the suspect Ochoa was keeping heroin at defendant's apartment; in any event, she claims that the information was stale when the affidavit was prepared and the warrant issued; and, finally, that the officers unduly delayed executing the warrant.

Although the issues overlap, it is relatively easy to separate the question of probable cause that Ochoa was storing heroin in defendant's apartment from the question of timeliness in obtaining and in executing the warrant.

### Location to be Searched

The informant's information that the suspect Ochoa was selling heroin "from his apartment" was amply corroborated by the officers' overhearing the conversation between the informer and Ochoa and their observation of the transaction. Ochoa went directly from the apartment to the bar, where the deal was consummated. This case, then, is not unlike *People* v. *Flores*, 68 Cal.2d 563, 565-566 [68 Cal.Rptr. 161, 440 P.2d 233], in which the fact that the defendant made "several trips' without any stops from his apartment to the sales location justified the magistrate in concluding that the defendant was harboring contraband "in his apartment." True, in *Flores* the officers observed "several trips"—not one—and the opinion suggests that the apartment was clearly the defendant's home. Nevertheless, we conclude that the inference that Ochoa was storing contraband at the apartment, even though it was listed in defendant's name, was not so unreasonable as to invalidate the warrant.[1]

### Timeliness of Warrant

Defendant next contends that the information furnished the magistrate,

---

[1]Sergeant Ginder later testified that before May 15 he had acquired information that Ochoa had been dealing from the apartment for about three months. The reliability of this information was not revealed nor was it contained in the affidavit in support of the search warrant.

some 12 days after the first and only observation of the suspect Ochoa, was stale.

The freshness of the information on the basis of which a warrant is sought and obtained, is one of the factors which determine whether there is probable cause to believe that the articles covered by the warrant will be found at the place that is to be searched. In *People* v. *Scott,* 259 Cal.App.2d 268, 277-278 [66 Cal.Rptr. 257], there was a seven-day delay between the last piece of information and the affidavit; however, there was only a four-day delay from the date that the contraband was to be found at the location until the affidavit was prepared. Moreover, the warrant was directed at a residence known to be that of the suspect. (*Id.* at p. 272.) Similarly, in *People* v. *Wilson,* 268 Cal.App.2d 581, 588-589 [74 Cal.Rptr. 131], the transaction was observed some 14 days before the affidavit was submitted; however, when the officer later phoned the residence—as here not listed to the suspect—he was told that the suspect was out of town and would return in a few days, thus justifying both the delay in applying for the warrant and the inference that the suspect would continue to be at an address not specifically known to be his home.

In *People* v. *Nelson,* 171 Cal.App.2d 356, 359 [340 P.2d 718] (disapproved on other grounds in *People* v. *Butler,* 64 Cal.2d 842, 845 [52 Cal. Rptr. 4, 415 P.2d 819]), the delay was 14 days from the most recent observation by the police, but only six days from the most recent information about the suspect. (See also *Brown* v. *Superior Court,* 34 Cal.App.3d 539, 544 [110 Cal.Rptr. 107] [nine-day delay]; *People* v. *Sheridan,* 2 Cal.App.3d 483, 490-491 [82 Cal.Rptr. 695] [same].)

In this case even the inference that heroin would be on the premises on the day of the transaction was somewhat weak. There is no information in the affidavit concerning how long Ochoa had been dealing with the informant from the apartment. The informant had stated only that "on numerous occasions' he had called the specified phone number and on "each occasion" had managed to set up a deal. Moreover, the observed transaction occurred only two days after the information was furnished, providing few useful data to predict how long Ochoa would continue to sell from the Lynnfield Avenue apartment. The delay of 12 days, then, in the circumstances, was on the fringe of unreasonableness; however, absent abuse of discretion, the question was primarily for the issuing magistrate (*Frazzini* v. *Superor Court,* 7 Cal.App.3d 1005, 1013 [87 Cal.Rptr. 32]; *People* v. *Wilson,* 256 Cal.App.2d 411, 417 [64 Cal.Rptr. 172].) We find no such abuse.

Defendant, however, contends further that the additional eight-day delay from May 15 until May 23, when the warrant was finally executed, invalidated the search.

The seminal case involving delayed executions of search warrants is *Sgro* v. *United States* (1932) 287 U.S. 206 [77 L.Ed. 260, 53 S.Ct. 138, 85 A.L.R. 108]. There a warrant was first issued by a United States commissioner on July 6, 1926. The applicable statute provided that the warrant had to be executed and returned within 10 days, after which time it was void. The warrant in question was not executed within the 10-day period, but on July 27, 1926, the same commissioner who had originally issued it, reissued it without any further showing of probable cause. Under color of the reissued warrant, the challenged search was then made. (*Id.* at p. 208 [77 L.Ed. at pp. 261-262].)

In the course of its opinion which invalidated the search, the Supreme Court emphasized that the Fourth Amendment was the result of previous abuses of the search warrant procedure. Proof of probable cause which authorizes the issuance of a search warrant "must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time.*" (*Id.* p. 210 [77 L.Ed. p. 263]. Italics added.) The statutory provision that voids the warrant unless executed within 10 days must be read "in the light of the requirement that probable cause must properly appear *when the warrant issues* . . . ." (*Id.* at p. 211 [77 L.Ed. at p. 263]. Italics added.) With these constitutional principles in mind, the court invalided the reissue of the warrant based on the stale information furnished to the commissioner on July 6th.

Later federal cases, decided under rule 41 of the Federal Rules of Criminal Procedure, which also provides for a 10-day period in which the warrant must be executed, have emphasized that in each case the question is whether "the probable cause upon which the warrant issued still existed at the time the warrant was executed . . . ." (*United States* v. *Rael* (10th Cir. 1972) 467 F.2d 333, 336; see also *United States* v. *Harper* (5th Cir. 1971) 450 F.2d 1032, 1043-1044; *United States* v. *Bradley* (5th Cir. 1970) 428 F.2d 1013, 1015-1016; *United States* v. *Dunnings* (2d Cir. 1969) 425 F.2d 836, 840-841; *United States* v. *Nepstead* (9th Cir. 1970) 424 F.2d 269, 270-271; *Mitchell* v. *United States* (1958) 258 F.2d 435, 436 [101 App. D.C. 341].)

In *United States* ex rel. *Beal* v. *Skaff* (7th Cir. 1969) 418 F.2d 430, 433, the court explained: "The reason for requiring that search warrants be executed 'forthwith,' is to assure that measure of judicial control over the search which the warrant procedure is intended to accomplish. The passage

of an undue amount of time between the issuance and execution of a warrant *raises the danger that the property described in the affidavit would no longer exist on the premises to be searched,* and that any property seized might therefore be other than that which was specified in the affidavit as grounds for issuing the warrant." (Italics added; fn. omitted.)

We now turn to California authority in the field, which is somewhat sparse. The leading case is *Cave* v. *Superior Court,* 267 Cal.App.2d 517 [73 Cal.Rptr. 167]. In *Cave* the warrant was issued on December 4, 1967, and executed seven days later, on December 11. The primary reason for the delay in executing the warrant was the police's expectation of finding additional property on the premises to be searched. (*Id.* p. 518.) The search was held invalid. In its discussion the court refers to two relevant Penal Code sections, in effect at the time. The first, section 1529, which sets forth the form for search warrants, directed an "immediate" search. The other, section 1534, read in relevant part as follows: "A search warrant must be executed and returned to the magistrate who issued it within ten days after its date; after the expiration of this time the warrant, unless executed, is void." Construing the two code sections together, the court held that the "immediate" search requirement of section 1529 controlled and that the 10-day period of section 1534 merely "has to do with a maximum time, . . ." (*Id.* at p. 520.) Although, on its face, the decision is thus but an interpretation and harmonization of two Penal Code sections as they read at the time, an analysis of the opinion leads to the conclusion that the court believed that any other result would violate the Fourth Amendment: in reaching its holding, the court first reviewed the entire history of royal writs of assistance and several authorities which consider them as one of the early causes of the American Revolution; adverting to the case at hand, the court then noted that by simply waiting for 10-days the police could turn a search warrant into one which was *"general* in effect although precise in form." (*Id.* p. 522. Italics added.)

Legislative reaction to *Cave* was swift. In chapter 362 of the Statutes of 1969, the Legislature struck the word "immediate" from the form for search warrants prescribed by section 1529 and added the following sentence to section 1534: "A search warrant executed within the 10-day period shall be deemed to have been timely executed and no further showing of timeliness need be made." Neither of these two 1969 amendments has ever been judicially interpreted.

In this case it is clear from the record that when the parties offered whatever little evidence they had on the question whether the execution of the

warrant was timely, the court was unaware of the specific wording of section 1534. It asked to be shown the statute. After reading it, the court announced: "Well, if the Code provides that it can be executed within 10 days after the Judge signing it, *I think that does away with the other days.* I think then we are confined to the 13 days." Referring to the statutory provision that "no further showing of timeliness need be made" the court observed: "So, I think that pretty well takes care of the period after. I think we are confined to what happened between May 2 and——."

Thus, it is plain from the record that the court construed the 1969 amendment to section 1534 as if, by statutory fiat, time stood still. That such an interpretation is constitutionally impermissible is obvious from the authorities which we have heretofore reviewed.

Search warrants cannot be issued and executed simultaneously. Permitting a certain amount of time to elapse between the two events is merely a recognition of the inevitable. The import of all the authorities we have found is simply this: That a delay in the execution is justified if—inevitably by hindsight—it appears that "the probable cause upon which the warrant issued still existed at the time the warrant was executed . . . ." (*United States* v. *Rael, supra,* 467 F.2d 333, 336.) A construction of the 1969 amendment to section 1534 which forecloses any inquiry into the continued existence of probable cause would permit executions of search warrants in situations in which such an inquiry would reveal that the probable cause which existed at the time of the issuance had, in fact, completely disappeared at the time of the execution.[2]

■ The trial court's interpretation of section 1534 is not, however, compelled by its language and it is our plain duty to interpret the 1969 amendment in such a way as to avoid any possible unconstitutionality. (*In re Kay,* 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142]; *Erlich* v. *Municipal Court,* 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334]; *Franklin* v. *Municipal Court,* 26 Cal.App.3d 884, 895-896 [103 Cal.Rptr.

---

[2]The mirror image of the situation where probable cause to believe that the warrant can be successfully executed disappears between issuance and execution, is the series of cases beginning with *Alvidres* v. *Superior Court,* 12 Cal.App.3d 575, 581 [90 Cal. Rptr. 682], holding that warrants may be validly issued before the articles referred to therein are expected to be at the place to be searched. (See also *People* v. *Shapiro,* 37 Cal.App.3d 1038, 1042-1043 [113 Cal.Rptr. 54]; *People* v. *Sanchez,* 24 CalApp.3d 664, 679 [101 Cal.Rptr. 193] [disapproved on other grounds in *People* v. *Martin,* 9 Cal.3d 687, 695, fn. 8 [108 Cal.Rptr. 809, 511 P.2d 1161]].) These cases are a recognition that what constitutionally matters is probable cause at the time of execution, rather than at the time of issuance. This follows necessarily from the principle of "privacy" announced in *Katz* v. *United States,* 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507]. It is the execution, not the issuance, which invades the protection guaranteed by the Fourth Amendment.

354].) Conforming to that principle, it seems obvious that all that the Legislature intended to accomplish by the amendment is judicial recognition—or, rather, reaffirmance—of the principle that where a search is made pursuant to a warrant, the burden of proving the invalidity of the search rests upon the challenger. (*Theodore* v. *Superior Court,* 8 Cal.3d 77, 101 [104 Cal.Rptr. 226, 501 P.2d 234].) The Legislature may have thought that *Cave* could be interpreted to change that rule to hold or suggest that unless a search warrant is executed immediately after its issuance, the People have the burden of accounting for every minute's delay. Hence, it struck the word "immediate" from section 1529 and added language to section 1534 declaring that if the warrant is executed within 10 days, the execution must be "deemed" to have been timely and that no burden rests on the People to make any "further showing of timeliness." By these changes the Legislature placed the burden of showing a change in probable cause between issuance and execution on the party challenging the search. It did not, however, preclude that party from attempting to meet that burden, if it had any evidence with which to do so.[3]

The fact that the trial court in the instant case gave the 1969 amendment to section 1534 an unconstitutional reading does not, however, necessarily lead to a reversal. The same error was committed by the trial court in *United States* v. *Harper, supra,* 450 F.2d 1032, 1044, where it, too, refused to listen to any evidence with respect to a delayed execution of a search warrant. Although this refusal was held to have been error, the execution was nevertheless held valid because the record conclusively showed that the delay was reasonable.

Similar principles apply to this case. The trial court held correctly that the warrant was issued on probable cause on May 15. There certainly was nothing in the affidavit in support of the warrant which would negate the continued existence of probable cause at some point of time between May 15 and the statutory expiration of the warrant on May 25. The defendant offered no evidence whatever that the circumstances had changed. What evidence there was, favored the People: Sergeant Ginder's testimony that he had information that Ochoa had been dealing from the apartment in question for about three months. (See fn. 1, *supra.*) Yet even if the trial court

---

[3]We need not attempt to list all types of evidence which might satisfy the challenger's burden. An affirmative change in the situation known to the officers executing the warrant would suffice. Even more potent would be a record which shows that the probable cause delineated in the affidavit in support of the search warrant was doomed to self-destruct by reason of passage of time or other extrinsic factors before the date of execution and the People offer no additional evidence in support of probable cause on the latter date.

disbelieved that testimony—perhaps because, if true, it would have been incorporated in the affidavit supporting the search warrant—or thought that it was insubstantial because the source of the information was not revealed, such disbelief did not amount to affirmative evidence in support of defendant's burden of showing that there had been a change in circumstances relating to probable cause between May 15 and May 23.

The trial court therefore reached the only legally permissible result.

The judgment is affirmed.

Stephens, J., and Hastings, J., concurred.

A petition for a rehearing was denied December 23, 1974.