[No. A060064. First Dist., Div. Four. Aug. 30, 1993.]

THE PEOPLE, Plaintiff and Appellant, v.
AARON CLAYTON et al., Defendants and Respondents.

## COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Gerald A. Engler, Deputy Attorneys General, for Plaintiff and Appellant.

David Y. Stanley and Kathleen Kahn, under appointments by the Court of Appeal, Jay B. Gaskill, Public Defender, and Scott Spear, Assistant Public Defender, for Defendants and Respondents.

## OPINION

**REARDON, J.**—Penal Code section 1534[1] requires that a search warrant be executed "within 10 days after date of issuance." In this case of first

---

[1] Penal Code section 1534 reads, in pertinent part: "(a) A search warrant shall be executed and returned within 10 days after date of issuance. A warrant executed within the 10-day period shall be deemed to have been timely executed and no further showing of timeliness need be made. After the expiration of 10 days, the warrant, unless executed, is void."

All further statutory references are to the Penal Code unless otherwise indicated.

impression in California, we must decide how that 10-day period is to be computed.

## I. FACTS

At 11 a.m. on July 15, 1992, a magistrate signed a warrant authorizing the search of 4719 Melrose Avenue in Oakland. Police executed the warrant about 5:20 p.m. on July 25, 1992. Inside, the police found the two defendants, Aaron Clayton and Diana Williams, controlled substances and weapons. Criminal charges were filed.

Ruling on defendants' motion to suppress, the trial court first found that probable cause existed both at the time the search warrant was issued and at the time it was executed. Then, after computing the 10-day period by *including* the date of issuance of the search warrant, the trial court held the search warrant "was not executed within the time prescribed by Penal Code section 1534 and, therefore, became void the day before it was served."[2] The trial court suppressed the fruits of the search and ordered the matter dismissed. The People appeal. (§ 1238, subd. (a)(7).) We reverse.

## II. DISCUSSION

### A. *Parties' Contentions*

Framing the issue on appeal, defendants state that the dispute is "whether the 10-day limit on the life of a warrant . . . begins to run the day *after* the warrant is issued, or whether those 10 days begin running *at the time* the warrant is issued. Under the first rule, the life of the warrant in this case began on July 16 and extended through the entire day of July 25. Under the second rule, the warrant expired at 11:00 a.m. on July 25." (Italics in original.) In support of the trial court's ruling, defendants argue that the purpose of the 10-day rule in section 1534 is to implement the Fourth Amendment guarantee against unreasonable searches made without probable cause. To safeguard that purpose, they argue, the 10-day rule must be narrowly interpreted.

The People argue that by the plain language of section 1534, a search warrant must be executed " 'within 10 days *after* date of issuance.' " (Italics added.) They contend the 10-day period begins to run the day *after* the date the search warrant is issued, i.e., commencing the next day. The People also

---

[2]The trial court commented: "Now, if that isn't clear enough to raise the issue for an appellate court to resolve it once and for all, I don't know how else to make it more clear, because that's what I've done before . . . ."

rely upon the general legislative policy that when computing the time for doing an act provided by law, the first day is excluded and the last day is normally included. (See, e.g., Code Civ. Proc., § 12; Gov. Code, § 6800; Civ. Code, § 10.)

## B. *Historical Background*

Although the problem of how the law computes time is an ancient one, this precise issue, insofar as it applies to the execution of search warrants, has not been decided in California. In 1856, the United States Supreme Court commented that the question whether the date on which an act occurred should be included or excluded when calculating a period of time "has been a vexed question for many centuries, both among learned doctors of the civil law and the courts of England and this country. It has been termed by a writer on civil law (Tiraqueau) the *controversia controversissima* [the most controversial of controversies]." (*Griffith et al.* v. *Bogert et al.* (1856) 59 U.S. (18 How.) 158, 162 [15 L.Ed. 307, 310], italics added.) That same year, the California Supreme Court stated: "Perhaps no class of questions has given rise to so much verbal criticism, as cases regarding the mode of computing time." (*Price* v. *Whitman* (1856) 8 Cal. 412, 415.)

In early common law cases, where the computation was to be made from the doing of an act, the usual practice was to include the day when that act was done. (*Griffith et al.* v. *Bogert et al.*, *supra*, 59 U.S. at p. 162 [15 L.Ed. at p. 310]; *United States* v. *Senecal* (D.Mass. 1929) 36 F.2d 388, 389.)[3] In later cases, however, this rule of construction was gradually repudiated and the rule excluding the first day of the period was adopted. (36 F.2d at p. 389.) For more than two centuries, however, the cases were in conflict and there was no fixed rule. After reviewing the cases up to his time, Lord Mansfield concluded " 'that the cases for two hundred years had only served to embarrass a point which a plain man of common sense and understanding would have no difficulty in construing.' " (Quoted in *Griffith et al.* v. *Bogert et al.*, *supra*, at p. 163 [15 L.Ed. at p. 310].) Lord Mansfield enunciated a rule looking to the circumstances of each case—whether the first day was included or excluded in computing a time period was dependent upon the context and subject matter. (*Ibid.*; *Price* v. *Whitman*, *supra*, 8 Cal. at p. 416.)

[3]This practice apparently led to the adoption of the rule in many jurisdictions that a homicide would not be recognized unless the death resulted within a year and a day from the time of the act which is alleged to have caused the death. The additional day was added to the time period to ensure inclusion of a whole year. (Perkins & Boyce, Criminal Law (3d ed. 1982) pp. 46-47.)

In 1969, the California Legislature extended this year-and-a-day rule to "three years and a day . . . ." (§ 194, as amended by Stats. 1969, ch. 593, § 1, p. 1225.) That statute specifically provides: "In the computation of such time, the whole of the day on which the act was done shall be reckoned the first." (*Ibid.*)

To end this uncertainty, many jurisdictions adopted statutes similar to that enacted by California in 1851 as section 530 of its original Practice Act: "The time within which an act is to be done, as provided in this Act, shall be computed by excluding the first day, and including the last. . . . " (Stats. 1851, ch. 5, § 530, p. 134.)

## C. *Present Statutes*

This general statutory rule has been carried over to the present day code sections the People rely upon in this case. (Code Civ. Proc., § 12; Civ. Code, § 10; Gov. Code, § 6800.) The cited sections provide, in identical language: "The time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded." (*Ibid.*) While no similar language appears in the Penal Code, no compelling reason for applying a different rule in criminal cases has been advanced. (See *People* v. *Twedt* (1934) 1 Cal.2d 392, 399 [35 P.2d 324].)

We see nothing in section 1534 itself which requires a departure from these generally accepted rules for determining the commencement of a time period. By its plain language, section 1534, subdivision (a) requires the search warrant to be executed "within 10 days *after* date of issuance." (Italics added.) Even in the absence of a time computation statute, when computing a period of time "from" or "after" a day, date, act, or event, the generally accepted rule is to exclude the *terminus a quo* (the starting point) and to include the *terminus ad quem* (the finishing point). (*Reichardt* v. *Reichardt* (1960) 186 Cal.App.2d 808, 811 [9 Cal.Rptr. 225].) Thus, the date of the act or event is excluded and the computation of time is commenced on the following day. (*Ziganto* v. *Taylor* (1961) 198 Cal.App.2d 603, 607 [18 Cal.Rptr. 229].)

Our Supreme Court has encouraged the use of uniform rules so that the method of computing time may be definite and certain. " 'Before a given case will be deemed to come under an exception to the general rule the intention must be clearly expressed that a different method of computation was provided for.' " (*In re Rodriquez* (1964) 60 Cal.2d 822, 825-826 [36 Cal.Rptr. 609, 388 P.2d 881]; see also *DeLeon* v. *Bay Area Rapid Transit Dist.* (1983) 33 Cal.3d 456, 460-461 [189 Cal.Rptr. 181, 658 P.2d 108].)

## D. *This Case*

The trial court erred when it computed the 10-day period within which the search warrant had to be executed by including the day the warrant was

issued. Given the unambiguous language of section 1534, the uniform method adopted by the Legislature for computing days within which an act provided by law is to be done, and our Supreme Court's encouragement that the general rule be used absent a clear intent to the contrary,[4] we hold that the 10-day period in which a search warrant must be executed under section 1534 is to be computed by excluding the day on which the search warrant is issued and by including the day on which the search warrant is executed. This method of computation is consistent with that adopted in other jurisdictions which have considered the issue. (See e.g. *United States* v. *Senecal, supra,* 36 F.2d at pp. 389-390; *United States* v. *La Monte* (E.D.Pa. 1978) 455 F.Supp. 952, 957, fn. 6; *State* v. *Durand* (La.Ct.App. 1984) 461 So.2d 1090, 1092-1093; *State* v. *Anonymous* (1984) (40 Conn.Supp. 20 [480 A.2d 600, 603, fn. 5]; *Commonwealth* v. *Cromer* (1974) 365 Mass. 519 [313 N.E.2d 557, 559, fn. 3].)

This does not mean, as defendants suggest, that law enforcement is precluded from executing the search warrant on the same day it is issued. The 10-day time period in section 1534 refers to the outer time limit within which the search warrant must be executed. Law enforcement officials are always encouraged to execute a search warrant as promptly as possible, given the overall circumstances of the particular investigation being conducted.

Defendants contend that the 10-day period begins to run *at the time* the warrant is issued. "A day is the period of time between any midnight and the midnight following." (Gov. Code, § 6806.) Thus, the fact that the search warrant herein was issued at 11 a.m. on July 15, 1992, and was executed about 5:20 p.m. on July 25, 1992, is not legally significant. The search warrant in this case could have been executed at any time after its issuance until midnight on July 25, 1992. (See *Gonzalez* v. *State* (Tex.App. 1989) 768 S.W.2d 436, 437-438; *State* v. *Durand, supra,* 461 So.2d at pp. 1092-1093.)[5]

E.  *Computation for the Return of Search Warrant Distinguished*

In support of the trial court's ruling, defendants remind us that underlying the 10-day rule in section 1534 is the Fourth Amendment guarantee against unreasonable searches and seizures made without probable cause. For that reason, they argue that the 10-day rule must be narrowly interpreted, so as to guard against information relied upon by the issuing magistrate becoming

---

[4]See, e.g., section 194, cited in footnote 3, *ante.*

[5]There is, of course, the special statutory rule that, absent express direction of the magistrate, "the warrant shall be served only between the hours of 7 a.m. and 10 p.m." (§ 1533.) That rule is not involved under the facts of our case.

stale. (See *Sgro* v. *United States* (1932) 287 U.S. 206, 211 [77 L.Ed. 260, 263, 53 S.Ct. 138, 85 A.L.R. 108]; *People* v. *Hernandez* (1974) 43 Cal.App.3d 581, 587 [118 Cal.Rptr. 53].) While we reverse the trial court because it erred when determining the commencement of the 10-day period, we note that section 1534, subdivision (a) specifically contains within it its own deadline: "After the expiration of 10 days, the warrant, *unless executed,* is void." (Italics added.)[6]

In *People* v. *Stevenson* (1976) 62 Cal.App.3d 915 [133 Cal.Rptr. 406], the execution was timely, but there was a failure to *return* the search warrant within 10 calendar days after issuance of the warrant. The tenth day in *Stevenson* was, as in this case, a Saturday, i.e., a "holiday" within the meaning of the general time computation statutes already discussed. (See Code Civ. Proc., § 12a; Gov. Code, §§ 6700, 6701.) In our case, the officers did not take a holiday, but instead went ahead and executed the search warrant on Saturday. In *Stevenson*, the search warrant was returned on the following Monday, 12 calendar days after the issuance of the warrant. For purposes of calculating the timeliness of the *return* of a search warrant, the *Stevenson* court looked to Government Code section 6706 which provides that whenever any act must be performed on a particular day which falls upon a holiday, the act may be performed instead upon the next business day. (See also Code Civ. Proc., § 12a.) The court held the return was properly made within the 10-day statutory period. (*People* v. *Stevenson, supra,* at p. 919.)

Cases subsequent to *Stevenson* have described the return of a search warrant as "essentially ministerial in nature" and have found delays in the return of a search warrant which have gone beyond the 10-day period, however calculated, as nonprejudicial. (See, e.g., *People* v. *Couch* (1979) 97 Cal.App.3d 377, 380 [158 Cal.Rptr. 647].)

But "[f]ailure to *execute* a warrant within the ten-day statutory period may not be excused as a mere ministerial or clerical aspect of search warrant proceedings." (*People* v. *De Jesus* (1984) 125 Misc.2d 963 [480 N.Y.S.2d 807, 809].) Even though we rely on the general time computation statutes to tell us when to start the 10-day time period running, we caution law enforcement against relying upon the related general statutes authorizing extensions to the next business day when the last day for executing a search warrant falls upon a holiday. It appears that section 1534 contains within it its own specific deadline for execution of the warrant.

---

[6]Compare the first sentence of section 1534, subdivision (a): "A search warrant shall be executed and returned within 10 days after date of issuance."

## F. *Continuing Requirement for Probable Cause*

Finally, defendants suggest that by not including the day the search warrant was issued when computing the 10-day period within which it must be executed, there is an increased likelihood that the information upon which the issuance was based may grow stale, i.e., probable cause for the search will no longer exist.

■ "It is the execution, not the issuance, which invades the protection guaranteed by the Fourth Amendment." (*People* v. *Hernandez, supra,* 43 Cal.App.3d at p. 589, fn. 2.) For example, in *Cave* v. *Superior Court* (1968) 267 Cal.App.2d 517 [73 Cal.Rptr. 167], a defendant successfully challenged a search conducted seven days after issuance of a warrant as illegal, even though the warrant was properly obtained and was executed and returned within ten days. The underlying information upon which the search warrant was based had grown stale.

Although the Legislature amended the search warrant statutes in 1969 in partial response to the *Cave* decision, the effect of those changes was to place the burden of showing a change in probable cause between issuance of a search warrant and its execution on the party challenging the search. "It did not, however, preclude that party from attempting to meet that burden, if it had any evidence with which to do so." (*People* v. *Hernandez, supra,* 43 Cal.App.3d at p. 590, fn. omitted.)

In this case, however, the trial court expressly found that probable cause existed, both at the time the search warrant was issued and at the time it was executed. We see no reason to disturb those rulings.

### III. DISPOSITION

The orders granting defendants' motion to suppress and dismissing the matters are reversed.

Poché, Acting P. J., and Perley, J., concurred.

Respondents' petition for review by the Supreme Court was denied November 17, 1993.